UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| Bernard National Loan Investors, Ltd., | : | |
| | : | |
| Plaintiff, | : | 08 Civ. 3573(DLC) |
| | : | |
| -against- | : | |
| | : | |
| Traditions Management, LLC, AEY, LLC, and Michael Aiken, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, New York  10018-1405
(212) 841-1000

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................................ii

PRELIMINARY STATEMENT .................................................................................................... 1

PLAINTIFF'S ALLEGATIONS.................................................................................................... 3

ARGUMENT .................................................................................................................................. 6

I.      PLAINTIFF'S CLAIM FOR SPECIFIC PERFORMANCE SHOULD BE
        DISMISSED. ...................................................................................................................... 7

        A.      Section 5(c) of the LPS Agreement Does Not Grant Plaintiff the
                Right to Receive the Requested Information. ................................................ 7

        B.      Even Under Plaintiff's Broad Reading of Section 5(c), Specific
                Performance Would Be Inappropriate. ....................................................... 10

II.     PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT
        OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED. ............ 12

III.    PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF SHOULD BE
        DISMISSED. .................................................................................................................... 13

IV.     PLAINTIFF'S INDEMNIFICATION CLAIM SHOULD BE DISMISSED........ 15

V.      ALL CLAIMS AGAINST MICHAEL AIKEN SHOULD BE DISMISSED. ...... 15

CONCLUSION ............................................................................................................................. 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aramony v. United Way of America*, 254 F.3d 403 (2d Cir. 2001) ..................................... 9

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc*., 361 F. Supp. 2d 283 (S.D.N.Y. 2005) ........................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..................................................... 6

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) .............................................................. 6

*CSI Investment Partners II, L.P. v. Cendant Corp*., 507 F. Supp. 2d 384 (S.D.N.Y. 2007) ..................................................................................................................... 12

*In re Chateaugay Corp.*, 154 B.R. 843 (S.D.N.Y. Bankr. 1993) ........................................ 8

*Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741 (S.D.N.Y. 1990) ................... 12

*Gulbenkian v. Gulbenkian*, 147 F.2d 173 (2d Cir. 1945) ................................................. 10

*In re Houbigant, Inc*., 914 F. Supp. 964 (S.D.N.Y. 1995) ................................................ 12

*In re Joint Eastern and Southern District Asbestos Litigation*, 14 F.3d 726 (2d Cir. 1993) ......................................................................................................................... 13

*In re September 11 Prop. Damage and Bus. Loss Litigation*, 481 F. Supp. 2d 253 (S.D.N.Y. 2007) ........................................................................................................... 6

*Lewis Tree Service, Inc., et al. v. Lucent Technologies, Inc*., et al., No. 99 Civ. 8556, 2000 WL. 1277303 (S.D.N.Y. Sept. 8, 2000) ................................................. 14

*Netherby Ltd. v. Jones Apparel Group, Inc*., No. 04 Civ. 7028, 2007 WL. 1041648 (S.D.N.Y. Apr. 5, 2007)........................................................................................ 10, 11

*Subaru Distributing Corp. v. Subaru of America*, 425 F.3d 119 (2d Cir. 2005)............. 6, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499 (2007)................................. 7

*Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490 (S.D.N.Y. 2002)............................ 12, 14

### STATE CASES

*242-44 East 77th Street, LLC v. Greater New York Mutual Insurance Co.*, 815
  N.Y.S.2d 507 (1st Dep't 2006) .................................................................................. 8

*RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 831 N.Y.S.2d 120 (1st Dep't 2007) ....... 10

*Reiss v. Finance Performance Corp.*, 764 N.E.2d 958 (N.Y. 2001) ................................. 10

## FEDERAL STATUTES

28 U.S.C. § 2201 .......................................................................................................... 13

## OTHER AUTHORITIES

25 *Williston on Contracts* § 67:4 (4th ed.) ....................................................................... 10

Defendants Traditions Management, LLC ("Traditions"), AEY, LLC ("AEY") and Michael Aiken respectfully submit this memorandum of law in support of their motion to dismiss the Complaint.

PRELIMINARY STATEMENT

In December 2006, Plaintiff Bernard National Loan Investors, Ltd., a Cayman Islands company controlled by the hedge fund D.B. Zwirn & Co., made a loan of $26.5 million to Traditions, a real estate marketing business that specializes in the sale of luxury residential property. In the eighteen months since the loan was extended, Traditions has made each and every required payment under the loan agreement. Plaintiff does not and cannot allege the contrary.

Notwithstanding the fact that Traditions has promptly paid each and every penny it owes under the loan agreement, Plaintiff demands that this Court grant Plaintiff a license to go fishing through Traditions' books and records. Faced with a collapsing credit market that makes its investment seem less attractive than it was when the contract was signed, Plaintiff apparently hopes to find some piece of paper or shard of information that might give it some basis — *any* basis — for backing out of the deal and prematurely recovering funds it agreed to commit for a term of five years.

Unable to claim a missed payment or other default, Plaintiff instead complains that it has a "concern" about whether or not Traditions has complied with certain covenants in the loan agreements and whether or not Traditions is willing and able to "perform its contractual obligations going forward." Compl. ¶ 12. To assuage this purported "concern," Plaintiff demands a litany of information from Traditions that it never bargained for — including financial statements, operating statements, reports on capital expenditures, status reports on

property developments, calculations of amortization payments, an accounting of travel, meal and entertainment expenses, quarterly calculations of the cash flow impact of changes in the "earned fee backlog" of commissions payable to Traditions, and an explanation and documentation of distributions to members.  Compl. ¶ 14.

Plaintiff's Complaint should be dismissed, because the heavily negotiated agreement between these sophisticated parties does not give Plaintiff the right to engage in a fishing expedition through Traditions' books and records whenever it purports to have a "concern" about Traditions' willingness or ability to perform.  Plaintiff is unable to point to <u>any</u> contractual provision stating that it is entitled to any of the materials on its long laundry list.  Because the contract nowhere states that Plaintiff is entitled to receive any of this information, Plaintiff attempts to read such an obligation into general language in Section 5(c) of the agreement, a "further assurances" clause relating to the collateral pledged by defendant AEY to secure the loan.  But the language in question was intended only to give Plaintiff the right to request instruments or documents necessary for it to obtain, create, or perfect a security interest in the collateral.  None of the information demanded by Plaintiff meets this description.

Because its claim under the express terms of the agreement is so patently deficient, Plaintiff also invokes the implied covenant of good faith and fair dealing — the frequent refuge of a plaintiff with no contractual leg to stand on.  The implied covenant cannot justify Plaintiff's blunderbuss information demand.  Under settled law, the covenant does not create new contractual rights; it simply ensures that parties to a contract perform the express terms of their agreement and do not unfairly deprive each other of explicit, bargained-for benefits.  Plaintiff never bargained for any of the extensive financial information it now demands and cannot use the implied covenant to create an obligation where none exists.

Because Plaintiff is not entitled to any of the information it seeks — and because Plaintiff's claims are deficient for additional reasons explained in detail below — the Complaint should be dismissed in its entirety with prejudice.

### PLAINTIFF'S ALLEGATIONS

The Complaint alleges that, on or about December 18, 2006, Plaintiff provided a $26.5 million loan to Traditions, comprised of $25.5 million in cash and a $1 million interest reserve (collectively, the "Loan"). Compl. ¶ 10. The Loan, which matures in January 2012, is evidenced by a Promissory Note and governed and secured by a Loan Agreement and Pledge and Security Agreement (the "LPS Agreement") among Plaintiff, Traditions, and AEY, which owns 100% of the preferred membership interests in Traditions and has pledged such interests as collateral for the Loan. Compl. ¶ 10 & Exs. A (hereinafter cited as "Promissory Note") and B (hereinafter cited as "LPS Agreement"). Traditions' principals — Mark Enderle, Mark Yarborough and Michael Aiken — are also parties to the LPS Agreement, but solely as to four specified covenants, none of which are referenced in the Complaint. *See* LPS Agreement, at p. 1. The Loan is further secured by a Secured Non-Recourse Guaranty ("Guaranty") under which AEY has guaranteed payment. Compl. ¶ 11 & Ex. C. The Promissory Note, LPS Agreement and Guaranty are collectively referred to as the "Loan Documents."

The Complaint does not allege that Traditions has missed any payment of principal or interest or that any other Event of Default under the Loan Documents has occurred. Rather, Plaintiff alleges that it has developed a "*concern*" about whether or not Traditions has performed all of its obligations under the Loan Documents and is willing and able to do so in the future. Compl. ¶ 12 (emphasis added). The basis of this alleged "concern" is as follows:

(a) "Apparent" travel, meal and entertainment ("TME") expenses and distributions to members by Traditions which are "larger than permitted" by the Loan Documents;

(b) Inventory and backlog information provided at the closing of the loan that "appear" to have been overstated; and

(c) Traditions has allegedly informed Plaintiff that it does not track the status of its ongoing and future projects.

Compl. ¶ 12.  Although Plaintiff claims that these actions are cause for "concern," the Complaint nowhere alleges that any of the conduct breached any specific contractual provision.

Plaintiff claims that its "concerns . . . over this conduct and the threat it poses to [Plaintiff's] security and interests" led Plaintiff to demand the following information which Defendants allegedly have failed to provide (the "Requested Information"):

- audited financial statements for 2007;

- monthly operating statements for 2007 and 2008;

- report of actual capital expenditures and costs incurred in each quarter of 2007, compared against budget;

- calculation for the following amortization payments:

  May 1, 2007: $200,000;

  August 21, 2007: $1,000,000;

  January 4, 2008: $400,000;

- per property quarterly operating statements for 2007, and first quarter 2008;

- status report of the current inventory of units per project;

- detailed accounting of TME (travel, meals and entertainment) expenses for 2007;

- a calculation of the impact on cash flow from changes in earned fee backlog by quarter;

- documentation/explanation of the fourth quarter 2007 distribution to members of $1,500,000.

Compl. ¶ 14.

The Requested Information was demanded by letter from Plaintiff's counsel dated March 28, 2008, a copy of which is attached to the Complaint. *See id.* Ex. D. The letter nowhere cited any contractual provision under which Defendants are required to provide any of the Requested Information. *See id.* Nor, with the exception of a vague reference to "New York law," did the letter cite any other legal basis for the demand. *See id.*

By letter dated April 4, Traditions' counsel responded, noting that most of the information sought in the demand letter already had been provided. *See id.* Ex. E. The letter further stated that Traditions would be willing to discuss a voluntary exchange of additional information in an effort to restore the relationship between the parties, even though Plaintiff's counsel had failed to specify any contractual provision, statute, or legal principle that would entitle Plaintiff to any of materials at issue. *See id.* Ex. E. In response, Plaintiff's counsel sent yet another letter demanding the Requested Information. *See id.* Ex. F. Once again, the letter failed to specify any contractual provision, statute, or legal principle under which Traditions is required to provide any of the materials. *See id.* This lawsuit ensued immediately thereafter.

The Complaint asserts that Plaintiff is entitled to the Requested Information pursuant to section 5(c) of the LPS Agreement, which provides as follows (when quoted in full, rather than selectively):

> At any time and from time to time, upon the reasonable written request of [Plaintiff], and at the sole expense of Pledgor [AEY], Pledgor [AEY] shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such other actions as [Plaintiff] may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted including, without limitation, filing UCC financing or continuation statements, provided that the amount of the indebtedness secured hereby shall not be increased thereby. Pledgor [AEY] hereby authorizes [Plaintiff] to file any such financing statement or continuation statement to the extent permitted by law. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any

> promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to [Plaintiff], duly endorsed in a manner satisfactory to [Plaintiff], to be held as Collateral pursuant to this Agreement.

*See* LPS Agreement § 5(c).  The provision does not purport to apply to Traditions, but to its guarantor, AEY.  Nor does the provision explicitly reference any of the Requested Information.  The demand letters sent by Plaintiff's counsel nowhere cite the provision as a basis for demanding the information.  *See* Compl. Exs. D-F.

Based on the factual allegations summarized above, Plaintiff asserts four claims: Count I of the Complaint, a claim for specific performance of Section 5(c) of the LPS Agreement, which Plaintiff now interprets to require specific production of the Requested Information; Count II, which alleges that Defendants have breached the covenant of good faith and fair dealing by failing to provide the Requested Information; Count III, which seeks a declaration that Defendants are in breach of the Loan Documents based, *inter alia*, on their refusal to provide the Requested Information; and Count IV, a claim for attorneys fees and costs under an indemnification provision of the LPS Agreement.

## ARGUMENT

A Court's function in deciding a motion to dismiss is to determine whether the Plaintiff's claims are "legally sufficient."  *In re September 11 Prop. Damage and Bus. Loss Litig.*, 481 F. Supp. 2d 253, 257 (S.D.N.Y. 2007).  "In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim."  *Subaru Distrib. Corp. v. Subaru of America*, 425 F.3d 119, 122 (2d Cir. 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)).  The complaint must provide the "grounds" for the plaintiff's "entitle[ment] to relief" by pleading "more than labels and conclusions." *Bell Atl.*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007) (internal citations and quotation marks omitted). A "formulaic recitation of the elements of a cause of action will not do." *Id.*

"In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference," including contracts on which the plaintiff's claims are based. *Subaru*, 425 F.3d at 123 (quoting *Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (in deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference"). The Court should resolve any contractual ambiguities in favor of the plaintiff, but is otherwise "not obliged to accept the allegations of the complaint as to how to construe such documents . . . ." *Subaru*, 425 F.3d at 122 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72).

## I.    PLAINTIFF'S CLAIM FOR SPECIFIC PERFORMANCE SHOULD BE DISMISSED.

### A.    *Section 5(c) of the LPS Agreement Does Not Grant Plaintiff the Right to Receive the Requested Information.*

Plaintiff's claim for specific performance of Section 5(c) of the LPS Agreement (Count I of the Complaint) should be dismissed because the provision does not require Defendants to supply the Requested Information. The provision nowhere mentions any of the Requested Information expressly and clearly is not intended give Plaintiff broad rights to demand whatever financial information it pleases. Rather, the limited purpose of the provision is to require AEY — not Traditions — to take actions and provide instruments and documents that are necessary for the purposes of obtaining, creating, or perfecting Plaintiff's security interest in the collateral AEY has pledged under the agreement. LPS Agreement § 5(c).

The intent of the provision is made clear by the bolded language below, which Plaintiff omits when selectively quoting the provision in the Complaint:

> At any time and from time to time, upon the reasonable written request of [Plaintiff], and at the sole expense of Pledgor [AEY], Pledgor [AEY] shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such other actions as [Plaintiff] may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted **including, without limitation, filing UCC financing or continuation statements, provided that the amount of the indebtedness secured hereby shall not be increased thereby. Pledgor [AEY] hereby authorizes [Plaintiff] to file any such financing statement or continuation statement to the extent permitted by law.  If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to [Plaintiff], duly endorsed in a manner satisfactory to [Plaintiff], to be held as Collateral pursuant to this Agreement.**

LPS Agreement § 5(c) (emphasis added).  The bolded language consists of specific examples of the kinds of documents that AEY is required to provide, and the kinds of actions AEY is required to take, under the provision — *i.e.,* "filing UCC financing or continuation statements" to perfect a security interest in the collateral; and delivering and endorsing "any promissory note, other instrument or chattel paper" evidencing or constituting loan collateral.  All of the specific examples relate to obtaining, perfecting, or securing Plaintiff's security interest in the collateral.

Under basic doctrines of contract interpretation, the Court must interpret the general language in the provision by reference to these specific examples.  *See 242-44 East 77th Street, LLC v. Greater New York Mut. Ins. Co.*, 815 N.Y.S.2d 507, 510 (1st Dep't 2006) ("Under the principles of *ejusdem generis*, a rule of construction, the meaning of a word in a series of words is determined 'by the company it keeps.'  In accordance with that rule, 'a series of specific words describing things or concepts of a particular sort are used to explain the meaning of a

general one in the same series.'") (citations omitted); *In re Chateaugay Corp.*, 154 B.R. 843, 850 (S.D.N.Y. Bankr. 1993) ("where general terms precede specific terms, the general terms should be read to apply only to persons or things in the same general kind or class as those specifically mentioned") (internal quotation marks and citations omitted); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 413-14 (2d Cir. 2001) ("Even when there is no 'true conflict' between two provisions, 'specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.") (internal citations omitted). The specific examples make clear that the more general language in the provision, referring to "documents and . . . actions" Plaintiff "may reasonably request" to preserve the "full benefits of this Agreement," is intended only to require AEY to provide documents and instruments of a similar character – *i.e.*, documents necessary to obtain, create or perfect a security interest in the collateral.

This interpretation of Section 5(c) is confirmed by the fact that it applies by its terms only to AEY, the "Pledgor" which has pledged its membership interests in Traditions as collateral for the Loan, and <u>not</u> to Traditions, the borrower whose financial information Plaintiff seeks. If the parties had intended for the provision to serve as a vehicle for requiring the production of the Requested Information —which consists of financial and operating statements of Traditions and other information concerning Traditions — then the provision would naturally have required Traditions to provide the information, not AEY. The provision applies to AEY alone because its sole purpose is to facilitate efforts to obtain, create, and perfect a security interest in the collateral pledged by AEY under the LPS Agreement.

Plaintiff's interpretation of Section 5(c) to give it the right to any financial information relevant to its "concerns" about Traditions' performance not only ignores this

limited purpose of the provision, but would effectively rewrite the parties' agreement.  The terms of the Loan Documents were heavily negotiated between sophisticated parties and grant Plaintiff the right to receive specific documents and information, including an annual budget and various documents and instruments relating to the collateral.  *See, e.g.,* LPS Agreement § 7 (initial and annual budgets); *id.* § 5(c) (UCC financing and continuation statements and other instruments relating to collateral).  To interpret the contract as Plaintiff does would provide information rights far broader than what the parties specifically negotiated.  A court should not rewrite a contract under the guise of interpretation.  *See, e.g., Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing") (internal quotation marks and citations omitted); *RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 831 N.Y.S.2d 120, 123 (1st Dep't 2007) ("there is no basis to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (internal citations and quotation marks omitted).

> **B.**    **Even Under Plaintiff's Broad Reading of Section 5(c), Specific Performance Would Be Inappropriate.**

Even under Plaintiff's broad reading of Section 5(c), the claim for specific performance fails.  "By the great weight of authority," specific performance may not be granted "unless the terms of the contract are sufficiently certain for the court to decree with some exactness what the defendant must do." 25 *Williston on Contracts* § 67:4 (4th ed.); *see also Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945) ("It is well settled that for the granting of specific performance the contract must be sufficiently certain in its terms to permit the decree to state with some exactness what the defendant must do.").  Accordingly, a claim for specific performance should be dismissed where the contract term a plaintiff seeks to specifically

enforce is not "certain enough to permit the court to frame an order of specific performance...."
*Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028, 2007 WL 1041648, at *20
(S.D.N.Y. Apr. 5, 2007) (citations omitted).  Here, Plaintiff's reading of Section 5(c) to require
Traditions to do anything "[Plaintiff] may reasonably request for the purposes of . . . preserving
the full benefits of this Agreement" — and not just actions related to creating or perfecting a
security interest in the collateral — renders the obligation so broad and amorphous that it may
not be specifically enforced.

   In *Netherby*, a judge of this Court declined to grant specific performance in
directly analogous circumstances.  The plaintiff requested specific performance of a contract
term requiring "Buyer . . . to use its best efforts to keep Seller generally informed of the activities
of Buyer's licensees, including providing Seller with copies of such licenses presently in
existence and licenses that are executed in the future." *Id.*, 2007 WL 1041648, at *3.  In
rejecting the claim, the Court held as follows:

> The Court declines to order specific performance of defendant's obligation to keep
> plaintiff "generally informed" of licensees' activities, except to the extent it
> specifically requires defendants to provide copies of licenses. "Generally informed"
> provides no meaningful guidance to the Court in framing an order or ensuring
> compliance.

*Id.* at 21.

   By the same token, while specific performance might be an appropriate remedy
here if Plaintiff sought any of the documents specifically enumerated in Section 5(c) such as
UCC financing statements, the general language Plaintiff relies on — requiring AEY to provide
documents Plaintiff "may reasonably request" for the purpose of "preserving the full benefits of
this Agreement" — provides no meaningful guidance for framing an order of specific

performance.  In the absence of any such guidance, specific performance is an inappropriate remedy.  *See id.*

> **II.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED.**

Because Plaintiff has no contractual right to the Requested Information under any express provision of the Loan Documents (*see* Point I.A), Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count II of the Complaint) necessarily fails. The implied covenant does not create new contractual rights; it simply ensures that parties to a contract perform the bargained-for terms of their agreement and do not unfairly deny each other expressly bargained-for benefits.  *See, e.g., CSI Investment Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) (the implied covenant "does not ... operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits" (quoting *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990)); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("the obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract").

The claim fails for the additional reason that it is duplicative.  "When 'the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of an express provision of the underlying contract,' the two claims are duplicative."  *CSI Inv. Partners II, L.P.*, 507 F. Supp. 2d at 425 (S.D.N.Y. 2007) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 964, 989 (S.D.N.Y. 1995)).  *See also Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) ("a breach of the implied covenant of good faith and fair

dealing is redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim of breach of an express provision of the underlying contract"). Here, Defendants' refusal to give the Requested Information to Plaintiff is the basis both of Plaintiff's claim that Defendants have violated Section 5(c) of the Loan Agreement and of Plaintiff's claim for breach of the implied covenant. The implied covenant claim is therefore duplicative and should be dismissed.

### III. PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED.

Plaintiff's claim for declaratory relief[1] (Count III of the Complaint) seeks a declaration that Defendants "are in breach of the Loan Documents" by reason of "the conduct alleged in Paragraphs 12 through 15." Compl. ¶¶ 34-35. The claim thus appears to be based on two categories of conduct referenced in those paragraphs: (i) Defendants' alleged failure to provide the Requested Information, *see id.* ¶ 14-15, and (ii) the travel expenditures, distributions and other items that allegedly caused Plaintiff "concern" as to "whether Traditions has duly performed its contractual obligations" and its "willingness and ability to perform its contractual obligations going forward." Compl. ¶ 12.

The first part of the claim — relating to Defendants' alleged failure to provide the Requested Information — fails because Defendants are not contractually obligated to provide

---

[1] Although Plaintiff labels the claim a cause of action for "declaratory relief" and invokes the Declaratory Judgment Act (28 U.S.C. § 2201), the Declaratory Judgment Act does not "provide an independent cause of action. Its operation is procedural only-to provide a form of relief previously unavailable." *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 14 F.3d 726, 732 (2d Cir. 1993). The claim is therefore more properly considered a claim for breach of contract that seeks the remedy of a declaratory judgment.

any of the materials in question, as discussed at length above.  *See* Points I(A), II.  Plaintiff

therefore has no right to a declaratory judgment that such a contractual obligation exists.

        The second part of the claim fails because the mere allegation that a Plaintiff has

"*concern*" about whether or not a party has performed its contractual obligations does not state a

viable cause of action for breach of contract, much less provide a basis for granting a declaratory

judgment that a contract has been breached.  Waffling about whether or not a breach occurred

does not suffice to state a claim.

        Even if the allegations could be read to allege a breach — as opposed to mere

"concern" about the possibility of a breach — the second part of the claim would fail because the

Complaint nowhere specifies the particular contractual provisions that allegedly were violated.

In order to state a claim based on a breach of contract, the Plaintiff must "identify the specific

provision of the contract that was breached as a result of the acts at issue." *Wolff,* 210 F. Supp.

2d at 494 (citation omitted).  Where, as here, the Complaint fails to do so, it should be dismissed.

*See id.; see also Lewis Tree Service, Inc., et al. v. Lucent Technologies, Inc.*, No. 99 Civ. 8556,

2000 WL 1277303, *5 (S.D.N.Y. Sept. 8, 2000) (dismissing breach of contract claim because

plaintiffs failed to identify contractual provisions that defendant had breached).[2]

---

[2] Notwithstanding the fact that it is titled a claim for "Declaratory Relief," Count IV also seeks damages.  *See* Compl. ¶ 36.  To the extent damages are sought, the claim should be dismissed for the additional reason that the remedy of a money judgment is expressly prohibited by the non-recourse provision of the contract.  LPS Agreement § 18 ("…[Plaintiff] shall not enforce the liability and obligation of [AEY] or [Traditions] … by an action or proceeding wherein a money judgment shall be sought…").

IV.    **PLAINTIFF'S INDEMNIFICATION CLAIM SHOULD BE DISMISSED.**

Count IV of the Complaint seeks attorneys fees and costs under an indemnification provision of the LPS Agreement that provides, subject to certain terms and conditions, that AEY must indemnify Plaintiff for any reasonable attorneys fees and expenses incurred as the result of "any failure on the part of Pledgor [AEY] to perform or be in compliance with any of the terms of this Agreement." LPS Agreement § 19(a)(iv). As set forth above, Plaintiff has failed to state a viable claim for breach of the agreement. Plaintiff therefore is not entitled to indemnification from AEY under this provision.

V.    **ALL CLAIMS AGAINST MICHAEL AIKEN SHOULD BE DISMISSED.**

While all of Plaintiff's claims are defective for the reasons set forth above, they are particularly untenable to the extent asserted against Michael Aiken. With the exception of two clauses that respectively identify him as a "Principal" of Traditions and the recipient of a letter demanding the Requested Information, the only factual allegation about Mr. Aiken in the Complaint is as follows:

> Michael Aiken is a manager of Traditions and an owner thereof, through his controlled limited liability corporation, and also AEY. He is an adult individual and a citizen of Tennessee. As one of the Principals, Aiken has personally undertaken performance of certain loan covenants, and is a signatory of the loan documents in his personal capacity and on behalf of Traditions and AEY.

Compl. ¶ 7. The allegation provides no grounds for seeking any relief whatsoever against Mr. Aiken, particularly since Plaintiff does not and cannot allege a breach of any of the loan covenants that Mr. Aiken has "personally undertaken" to perform.

Although the Complaint misleadingly omits to mention it, Mr. Aiken is not a party to Section 5(c) of the LPS Agreement, the contractual provision on which all of Plaintiff's claims depend. The LPS Agreement provides that Mr. Aiken "[is] joining in the execution of

-15-

this Agreement *solely as to Sections 4(k), 5(q), 5(s) and 5(v) hereof*." LPS Agreement, at 1 (emphasis added). The Complaint nowhere alleges a breach of any of these provisions, and Plaintiff's claims against Mr. Aiken therefore should be dismissed.

CONCLUSION

This case involves a straightforward issue of contract interpretation. Plaintiff brings claims purportedly to invoke rights it does not have under the plain language of the contract. For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
       May 23, 2008

                                    Respectfully submitted,

                                    COVINGTON & BURLING LLP

                                    By: s/ C. William Phillips
                                         C. William Phillips
                                         Mark P. Gimbel
                                         Ethan Jacobs

                                    The New York Times Building
                                    620 Eighth Avenue
                                    New York, New York  10018-1405
                                    (212) 841-1000

                                    *Attorneys for Defendants*

-17-