UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Bernard National Loan Investors, Ltd.,

                           Plaintiff,

                -against-

Traditions Management, LLC, AEY, LLC, and
Michael Aiken,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. 3573(DLC)

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

*Attorneys for Defendants*

TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

Preliminary Statement ........................................................................................ 1

Plaintiff's Allegations ......................................................................................... 4

A.    Fraud Claim ............................................................................................ 5

    i.    Financial Projections. ................................................................... 5

    ii.    Status of Hill Country Harbor Contract. ...................................... 7

B.    Information Claims. ................................................................................ 8

Argument .......................................................................................................... 11

I.    PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED. ............................. 12

    A.    Plaintiff's Allegations Regarding Future Projections Fail to State a
        Claim for Fraud. ......................................................................... 13

    B.    The Allegations Relating to the Hill Country Harbor Deal Likewise
        Fail to State a Claim for Fraud. .................................................. 17

II.    THE INFORMATION CLAIMS SHOULD BE DISMISSED. ............................ 19

    A.    Section 5(c) of the LPS Agreement Does Not Grant Plaintiff the
        Right to Receive the Requested Information. ............................. 19

    B.    Even Under Plaintiff's Broad Reading of Section 5(c), Specific
        Performance Would Be Inappropriate ........................................ 22

    C.    Plaintiff's Claim for Breach of the Implied Covenant of Good Faith
        and Fair Dealing Should Be Dismissed ..................................... 24

Conclusion ....................................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aramony v. United Way of America*, 254 F.3d 403 (2d Cir. 2001) ................................... 21

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc*., 361 F. Supp. 2d 283 (S.D.N.Y. 2005) ......................................................................................... 25

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................. 11

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ........................................................... 11

*Brinsights, LLC v. Charming Shoppes of Delaware, Inc*., No. 06 Civ. 1745, 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008) ......................................................... 18

*CSI Investment Partners II, L.P. v. Cendant Corp*., 507 F. Supp. 2d 384 (S.D.N.Y. 2007) ......................................................................................... 24

*In re Carter-Wallace, Inc., Securities Litigation*, 220 F.3d (2d Cir. 2000) ..................... 13

*In re Chateaugay Corp*., 154 B.R. 843 (S.D.N.Y. Bankr. 1993) ...................................... 20

*Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ...................................................... 12

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ................................................................. 16

*Decker v. Massey Ferguson, Ltd*., 681 F.2d 111 (2d Cir. 1982) ................................. 13, 14

*Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741 (S.D.N.Y. 1990) .................. 24

*Goplen v. 51job, Inc*., 453 F. Supp. 2d 759 (S.D.N.Y. 2006) ............................. 14, 15, 16

*Gulbenkian v. Gulbenkian*, 147 F.2d 173 (2d Cir. 1945) ................................................. 22

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ......................................................... 16

*Highlands Insurance Co. v. PRG Brokerage, Inc*., No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ................................................................... 13

*Hillson Partners L.P. v. Adage, Inc*., 42 F.3d 204 (4th Cir. 1994) .................................. 16

*In re Houbigant, Inc*., 914 F. Supp. 964 (S.D.N.Y. 1995) ............................................... 25

*Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707, 2008 WL 762101 (S.D.N.Y. Mar. 24, 2008) ........................................................................ 12

*Morrissey v. General Motors Corp.*, 21 Fed. Appx. 70, 73 (2d Cir. 2001) ..................... 18

*Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221 (S.D.N.Y. 2006) ...................................... 13

*Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028, 2007 WL 1041648 (S.D.N.Y. Apr. 5, 2007)................................................................................ 23

*In re NTL, Inc. Securities Litigation*, 347 F. Supp. 2d 15 (S.D.N.Y. 2004) .............. 14, 19

*Rapoport v. Asia Electrics Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y.2000)........... 12, 17

*Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2007 WL 2044656 (S.D.N.Y. Jul. 17, 2007)..................................................... 17, 18

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ........................................................... 14

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801 (2d Cir. 1996) ........................................................... 14

*In re September 11 Prop. Damage and Bus. Loss Litigation*, 481 F. Supp. 2d 253 (S.D.N.Y. 2007) ..................................................................... 11

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994).......................... 12, 13, 14

*Subaru Distributing Corp. v. Subaru of America*, 425 F.3d 119 (2d Cir. 2005)......... 11, 12

*Telecom International America, Ltd. v. AT & T Corp.*, 280 F.3d 175 (2d Cir. 2001)................................................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007).............................. 11

*Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490 (S.D.N.Y. 2002)................................. 24

STATE CASES

*242-44 East 77th Street, LLC v. Greater New York Mutual Insurance Co.*, 31 A.D.3d 100, 815 N.Y.S.2d 507 (1st Dep't 2006) ....................................... 20

*Cristallina S.A. v. Christie, Manson & Woods International*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (N.Y. 1986)....................................................................... 13

*Dragon Investment Co. II LLC v. Shanahan*, 49 A.D.3 405, 854 N.Y.S.2d 115 (1st Dep't 2008)....................................................................................... 13

*Hoffman v. Playmates of Miami, Inc.*, 22 A.D.2d 674, 253 N.Y.S.2d 307 (1st Dep't 1964) ................................................................................................ 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group*, LLC, 19 A.D.3d 273, 798 N.Y.S.2d 14 (1st Dept. 2005) .......................................... 13

*RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 37 A.D.3d 272, 831 N.Y.S.2d 120 (1st Dep't 2007) ................................................................................ 22

*Reiss v. Finance Performance Corp.*, 97 N.Y.2d 195, 764 N.E.2d 958, 738 N.Y.S.2d 658 (N.Y. 2001) ........................................................................ 22

## FEDERAL STATUTES

Fed. R. Civ. P. 9(b) ............................................................................. 12, 14, 16

## MISCELLANEOUS

25 Williston on Contracts § 67:4 (4th ed.) ...................................................... 22

Defendants Traditions Management, LLC ("Traditions"), AEY, LLC ("AEY") and Michael Aiken respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's First Amended Complaint.

## PRELIMINARY STATEMENT

In December 2006, Plaintiff Bernard National Loan Investors, Ltd., a Cayman Islands company controlled by the hedge fund D.B. Zwirn & Co., made a loan of $26.5 million to Traditions, a small real estate marketing business that specializes in the sale of luxury residential property.  In the nineteen months since the loan was extended, Traditions has made all required payments under the loan agreement.  The Amended Complaint does not allege that Traditions has missed a single payment required under the loan agreement.

Notwithstanding the fact that Traditions has promptly paid each and every penny it owes under the loan agreement, on April 18, 2008 Plaintiff filed a complaint, not to claim any payment default, but to demand an opportunity (nowhere provided in the loan agreement) to fish through Traditions' books and records.  Faced with a collapsing credit market that made its investment seem less attractive than it was when the contract was signed, Plaintiff apparently hoped to find some piece of paper or shard of information that might give it some basis — *any* basis — for backing out of the deal and prematurely recovering funds that it agreed to lend for a term of five years.

Unable to claim a missed payment, Plaintiff instead complained that it had a "concern" about whether or not Traditions had complied with certain covenants in the loan agreements and whether or not Traditions is willing and able to "perform its contractual obligations going forward."  Compl. ¶ 12.  To assuage this purported "concern," Plaintiff

demanded a litany of information from Traditions that it had never bargained to receive —
including financial statements, operating statements, reports on capital expenditures, status
reports on property developments, calculations of amortization payments, an accounting of
travel, meal and entertainment expenses, quarterly calculations of the cash flow impact of
changes in the "earned fee backlog" of commissions payable to Traditions, and an explanation
and documentation of distributions to members.  Compl. ¶ 14.

        After Traditions moved to dismiss the original Complaint on the ground that the
contract gave Plaintiff no right to the information it was fishing for, Plaintiff mooted the motion
by filing an Amended Complaint that asserted, *inter alia*, a new claim that the loan agreement
was fraudulently induced.  Nothing happened between the filing of the original Complaint and
the filing of Amended Complaint to suddenly bring this new claim to light.  Every one of the
"facts" alleged in the Amended Complaint was available to the Plaintiff prior to the filing of the
original Complaint, yet Plaintiff apparently and rightly concluded that they did not give rise to a
claim for fraud.  The claim is no more viable today; the only changed circumstance is Plaintiff's
decision to increase the litigation pressure upon Traditions.

        Plaintiff's fraud claim rests principally on certain financial projections provided
by Traditions that proved unduly optimistic when the national housing market collapsed.
Although Plaintiff asserts that the projections proved inaccurate, it is well settled that a lack of
clairvoyance does not equal fraud.  To state a claim for fraud based on financial projections, a
plaintiff must do more than allege that the projections proved incorrect in hindsight:  The
plaintiff must plead specific facts showing that the Defendant lacked a reasonable basis for the

projections or otherwise knew that they were inaccurate <u>at the time they were made</u>.  The

Amended Complaint pleads no such facts and therefore fails to state a claim for fraud.

Plaintiff attempts to buttress its fraud claim by making the additional allegation

that Defendants failed to disclose problems with a specific real estate development, but the

assertion is demonstrably false.  The disclosure schedules to the loan agreement, which are

attached to the Amended Complaint and may be considered by the Court in resolving this motion

to dismiss, state in plain English that the development in question is "on hold" and that "it has

not been determined at this point whether, or in what form, this project will proceed."  In the face

of this indisputable disclosure, the Court need not accept the truth of Plaintiff's false and

contradictory allegation that Traditions "never made any timely disclosures" that "there were

problems with this deal."  Am. Compl. ¶ 25.  Plaintiff's fraud claim relating to this development

lacks any merit and should be dismissed.

The Court also should dispose of Plaintiff's claims that it is entitled to receive the

bundle of information it has demanded from Traditions.  The heavily-negotiated agreement

between these sophisticated parties gives Plaintiff neither the right to the information sought, nor

the right to engage in a fishing expedition through Traditions' books and records whenever it

purports to have a "concern" about Traditions' willingness or ability to perform.  Plaintiff is

unable to point to <u>any</u> contractual provision stating that it is entitled to any of the materials on its

long laundry list.  Because the contract nowhere states that Plaintiff is entitled to receive any of

this information, Plaintiff attempts to read such an obligation into general language in Section

5(c) of the agreement, a "further assurances" clause relating to the collateral pledged by

defendant AEY to secure the loan.  But the language in question was intended only to give

-3-

Plaintiff the right to request instruments or documents necessary for it to obtain, create, or perfect a security interest in the collateral. None of the information demanded by Plaintiff meets this description.

Because its claim under the express terms of the agreement is patently deficient, Plaintiff also invokes the implied covenant of good faith and fair dealing — the last refuge of a plaintiff with no contractual leg to stand on. The implied covenant cannot justify Plaintiff's blunderbuss information demand. Under settled law, the covenant does not create new contractual rights; it simply ensures that parties to a contract perform the express terms of their agreement and do not unfairly deprive each other of explicit, bargained-for benefits. Plaintiff never bargained for any of the extensive financial information it now demands and cannot use the implied covenant to create an obligation where none exists.

### PLAINTIFF'S ALLEGATIONS

On or about December 18, 2006, Plaintiff provided a $26.5 million loan to Traditions, comprised of $25.5 million in cash and a $1 million interest reserve (collectively, the "Loan"). Am. Compl. ¶ 18. The Loan, which matures in January 2012, is evidenced by a Promissory Note and governed and secured by a Loan Agreement and Pledge and Security Agreement (the "LPS Agreement") among Plaintiff, Traditions, and AEY, which owns 100% of the preferred membership interests in Traditions and has pledged such interests as collateral for the Loan. Am. Compl. ¶ 18 & Exs. A (hereinafter cited as "Promissory Note") and B (hereinafter cited as "LPS Agreement"). Traditions' three principals — Mark Enderle, Mark Yarborough and Michael Aiken — are also parties to the LPS Agreement, but solely as to four

specified covenants.  *See* LPS Agreement, at p. 1.  The Loan is further secured by a Secured

Non-Recourse Guaranty ("Guaranty") under which AEY has guaranteed payment.  Am. Compl.

¶ 19 & Ex. C.  The Promissory Note, LPS Agreement and Guaranty are collectively referred to

as the "Loan Documents."

   Plaintiff's Amended Complaint asserts six claims arising out of or related to the

loan transaction.  Of these six claims, the following are the subject of this motion to dismiss:

Count I, a claim that Defendants fraudulently induced Plaintiff to enter into the loan agreement;

Count III, to the extent that it asserts that Defendants breached the LPS Agreement by failing to

provide certain requested information; Count IV, which alleges that Defendants should be

required to specifically perform the LPS Agreement by providing the same information; and

Count V, which asserts that failure to provide the requested information breached the implied

covenant of good faith and fair dealing.  Defendants believe the remaining claims are equally

without merit, but do not ask the Court to dismiss them at this time.

  **A.**  **Fraud Claim**

   Plaintiff claims that it was fraudulently induced to extend the loan by two

categories of misrepresentations (i) certain financial projections that later proved inaccurate, and

(ii) alleged misrepresentations as to the status of the so-called Hill Country Harbor development.

   i.  <u>Financial Projections</u>.

   The Amended Complaint alleges that, before the loan agreement was executed,

Mr. Aiken represented that "closings for the sale of some $308 million of residential units under

contract were definitively scheduled for the 4th quarter 2006, … which would result in $8.3

million of" revenue to Traditions, $5.4 million of which would be used to amortize the loan.

Am. Compl. ¶¶ 4-5, 16.    The contract, however, contains no guarantee that principal will be repaid on any date before the maturity date in 2011.  LPS Agreement § 3(a).  Rather, under a "waterfall" provision of the LPS Agreement, principal is paid prior to the maturity date only to the extent that the company has excess operating revenue after paying expenses, interest, and certain fees for services.  LPS Agreement § 3(d).

          The revenue projections allegedly were updated at the closing of the loan transaction, when Mr. Aiken, in a 2007 budget attached to the LPS Agreement,[1] allegedly "reaffirmed that all of the initial unit closings would occur, but [notified Plaintiff] that some of these closings would not occur until 'early' 2007."  Am. Compl. ¶ 17 (citing LPS Agreement Ex. E).[2]  Plaintiff alleges that, based on these updated projections and other unspecified representations, it agreed, on December 18, 2006, to extend the loan to Traditions.  *Id.* ¶ 18.

          A cover memorandum attached to the updated projections makes clear, however, that the company was not in a position to make definitive predictions as to its 2007 results and that the projections in the 2007 budget were subject to revision.  The memorandum states that the budget will be "amended and updated by January 1, 2007, by which time the company believes it will be able to more accurately reflect the upcoming fiscal year."  *Id.*  It further states that "[a] variety of issues will impact the final budget including, but not limited to" fees to be paid to

---

[1]       A citation in paragraph 17 of the Amended Complaint indicates that the updated financial projection on which the claim is based is the 2007 budget attached as Exhibit E to the loan agreement.  *See* Am. Compl. ¶ 17 (citing LPS Agreement Ex. E).

[2]       The copy of the LPS Agreement annexed as Exhibit B to the Amended Complaint is missing the slipsheet that precedes Exhibit E to the LPS Agreement.  For the Court's convenience, a complete copy of the LPS Agreement is attached as Exhibit A to the accompanying Declaration of C. William Phillips.

Entheos, LLC, Gemini I, LLC, and Hideaway Investments LLC; revenue from projects under

negotiation; the status of certain contracts; and the timing of certain projected sales. *Id.*  The

concluding paragraph provides, *inter alia*, as follows:

> By year end, [Traditions] will have a clearer understanding
> of total revenues for 2006 than it does at this time. The
> current year is unusual versus prior years in that a
> substantial amount of revenue and earnings were
> scheduled to occur in the final weeks of 2006.  We now
> believe a substantial amount of budgeted sales will likely
> close during the first part of 2007 impacting the results of
> 2006 and the final budget for 2007.

LPS Agreement Ex. E ("Initial Budget") at 1.

Although Plaintiff alleges that the revenue projections set forth in the 2007 budget

ultimately proved inaccurate, the Amended Complaint nowhere pleads any facts demonstrating

that Mr. Aiken or any other Defendant had reason to believe the projections were inaccurate at

the time they were made.  Instead, the Complaint rests on speculation, asserting that "[g]iven the

limited life span of residential real estate sales like those at issue here, Defendants must have

known" that the closings on which the financial projections were based would not occur.  Am.

Compl. Ex. 24.

ii.      Status of Hill Country Harbor Contract.

Although the fraud claim rests principally on revenue projections that allegedly

proved inaccurate, Plaintiff also accuses Defendants of misrepresenting the status of a particular

real estate development project known as Hill Country Harbor.  Specifically, the Amended

Complaint alleges that this development was terminated in February of 2007; that Defendants

"must have known there were problems with this deal before" it was terminated; and that

Defendants failed to make a "timely disclosure" of such problems.  *Id.* ¶ 25.  This allegation is

directly contradicted by a disclosure schedule attached to the LPS Agreement, which states that

the Hill Country Harbor project has been placed "on hold" and may not proceed:

> This Sales Agreement relates to the Hill Country Harbor project in Palo Pinto County, Texas. Although this Sales Agreement is currently in effect, Developer is in the process of reconfiguring the project away from built product to sales of unimproved lots and <u>the development has been placed "on hold"</u>. Developer and Traditions … are discussing these changes.  <u>It has not been determined at this point whether, or in what form, this project will proceed</u>. Traditions currently has outstanding invoices totaling $190,000. Although payment is anticipated, non-payment would result in a dispute.

LPS Agreement Schedule V (emphasis added).

### B.     Information Claims.

The remaining claims at issue in this motion (the "Information Claims") concern

Defendants' alleged failure to provide certain information that Plaintiff requested from

Traditions (the "Requested Information").  Specifically, Plaintiff alleges that, after Defendants'

pre-closing revenue projections proved inaccurate, Plaintiff requested that Defendants provide

certain information "[i]n an effort to give Traditions an opportunity to explain itself, to show that

it is not in default and that it has not actually or anticipatorily breached the loan documents."

Am. Compl. ¶ 39.  The Requested Information consisted of:

- audited financial statements for 2007;
- monthly operating statements for 2007 and 2008;
- report of actual capital expenditures and costs incurred in each quarter of 2007, compared against budget;
- calculation for the following amortization payments:
     May 1, 2007: $200,000;
     August 21, 2007: $1,000,000;
     January 4, 2008: $400,000;

- per property quarterly operating statements for 2007, and 1st quarter 2008;
- status report of the current inventory of units per project;
- detailed accounting of T/M/E[3] expenses for 2007;
- a calculation of the impact on cash flow from changes in earned fee backlog by quarter; and
- documentation/explanation of the 4th quarter 2007 distribution to members of $1.5 million.

Am. Compl. ¶ 39.

The demand for this information was made by letter from Plaintiff's counsel dated March 28, 2008, a copy of which is attached to Plaintiff's original Complaint. *See* Initial Compl. Ex. D. The letter nowhere cited any contractual provision under which Defendants are required to provide any of the Requested Information. *See id.* Nor, with the exception of a vague reference to "New York law," did the letter cite any other legal basis for the demand. *See id.* Moreover, although Plaintiff now claims that the information demand was prompted in part by concern over the fact that Traditions missed its revenue projections, the letter nowhere mentions the revenue projections on which Plaintiff's fraud claim is based, much less expresses any concern that the projections proved inaccurate. *See id.*

By letter dated April 4, 2008, Traditions' counsel responded, noting that most of the information sought in the demand letter already had been provided. *See* Initial Compl. Ex. E. The letter further stated that Traditions would be willing to discuss a voluntary exchange of additional information in an effort to restore the relationship between the parties, even though Plaintiff's counsel had failed to specify any contractual provision, statute, or legal principle that

---

[3]    "T/M/E" is an abbreviation for Travel, Meals and Expenses.

would entitle Plaintiff to any of the materials at issue.  *See id.*  In response, Plaintiff's counsel

sent yet another letter demanding the Requested Information.  *See* Initial Compl. Ex. F.  Once

again, this letter failed to specify any contractual provision, statute, or legal principle under

which Traditions was required to provide any of the materials.  *See id.*

Immediately after delivering the letter, Plaintiff filed its original Complaint in this

action.  The original Complaint contained no claim of fraud and nowhere mentioned any concern

over the allegedly inaccurate financial projections that are the focus of the Amended Complaint.

*See* Initial Complaint.  The principal focus of the original Complaint was Plaintiff's claim that it

is contractually entitled to receive the Requested Information.  *See id.*  After Defendants moved

to dismiss the original Complaint for failure to state a claim, Plaintiffs filed the Amended

Complaint that is the subject of this motion.

The Amended Complaint asserts that Plaintiff is entitled to the Requested

Information pursuant to section 5(c) of the LPS Agreement, which provides as follows (when

quoted in full, rather than selectively):

> At any time and from time to time, upon the reasonable
> written request of [Plaintiff], and at the sole expense of
> Pledgor [AEY], Pledgor [AEY] shall promptly and duly
> give, execute, deliver, file and/or record such further
> instruments and documents and take such other actions as
> [Plaintiff] may reasonably request for the purposes of
> obtaining, creating, perfecting, validating or preserving the
> full benefits of this Agreement and of the rights and
> powers herein granted including, without limitation, filing
> UCC financing or continuation statements, provided that
> the amount of the indebtedness secured hereby shall not be
> increased thereby.  Pledgor [AEY] hereby authorizes
> [Plaintiff] to file any such financing statement or
> continuation statement to the extent permitted by law.  If
> any amount payable under or in connection with any of the
> Collateral shall be or become evidenced by any

> promissory note, other instrument or chattel paper, such
> note, instrument or chattel paper shall be promptly
> delivered to [Plaintiff], duly endorsed in a manner
> satisfactory to [Plaintiff], to be held as Collateral pursuant
> to this Agreement.

*See* LPS Agreement § 5(c).  The provision does not purport to apply to Traditions, but to its

guarantor, AEY.  Nor does the provision explicitly reference any of the Requested Information.

The demand letters sent by Plaintiff's counsel nowhere cite the provision as a basis for

demanding the information.  *See* Initial Compl. Exs. D-F.


## ARGUMENT

A Court's function in deciding a motion to dismiss is to determine whether the

Plaintiff's claims are "legally sufficient."  *In re September 11 Prop. Damage and Bus. Loss*

*Litig.*, 481 F. Supp. 2d 253, 257 (S.D.N.Y. 2007)**.**  "In order to survive dismissal, a plaintiff must

assert a cognizable claim and allege facts that, if true, would support such a claim." *Subaru*

*Distrib. Corp. v. Subaru of America*, 425 F.3d 119, 122 (2d Cir. 2005) (quoting *Boddie v.*

*Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)).  The complaint must provide the "grounds" for the

plaintiff's "entitle[ment] to relief" by pleading "more than labels and conclusions." *Bell Atl.*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007) (internal citations and quotation marks

omitted).  A "formulaic recitation of the elements of a cause of action will not do." *Id.*

"In determining the adequacy of the complaint, the court may consider any

written instrument attached to the complaint as an exhibit or incorporated in the complaint by

reference," including contracts on which the plaintiff's claims are based. *Subaru*, 425 F.3d at

122 (quoting *Int'l Audiotext Network, Inc. v. AT & T Co.***,** 62 F.3d 69, 72 (2d Cir. 1995) (per

-11-

curiam)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (in

deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as . . .

documents incorporated into the complaint by reference").  The Court should resolve any

contractual ambiguities in favor of the plaintiff, but is otherwise "not obliged to accept the

allegations of the complaint as to how to construe such documents . . . ."  *Subaru*, 425 F.3d at

122 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72).  The truth of factual allegations that

are contradicted by documents properly considered on a motion to dismiss need not be accepted.

*See e.g., Rapoport v. Asia Elecs. Holding Co*., 88 F. Supp. 2d 179, 184 (S.D.N.Y.2000) ( "If

these documents contradict the allegations of the amended complaint, the documents control and

this Court need not accept as true the allegations in the amended complaint." )

## I.    PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED.

Under New York law, in order to state a claim for fraud, a plaintiff must allege

(1) a material false representation of an existing fact; (2) made with knowledge of its falsity;

(3) with intent to defraud; (4) reasonable reliance; (5) and damages.  *Katz v. Image Innovations*

*Holdings, Inc.*, No. 06 Civ. 3707, 2008 WL 762101, at *2 (S.D.N.Y. Mar. 24, 2008) (citing

*Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)).  Rule 9(b) of the Federal Rules of Civil

Procedure imposes the additional requirement that "a party must state with particularity the

circumstances constituting fraud…"  Fed. R. Civ. P. 9(b).  To satisfy the requirements of Rule

9(b), a fraud claim must "(1) specify the statements that the plaintiff contends were fraudulent,

(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.

1994) (citation omitted).  Plaintiffs' fraud claim fails to meet these requirements.

        A.     *Plaintiff's Allegations Regarding Future Projections Fail to State a Claim for Fraud.*

     "Generally, a statement concerning future profits or income is a mere prediction or opinion, rather than a statement of fact, and does not constitute actionable fraud."  N.Y. Jur. Fraud and Deceit § 85.  *See also Dragon Inv. Co. II LLC v. Shanahan*, 49 A.D.3 405, 854 N.Y.S.2d 115, 117 (1st Dep't 2008) (a "prediction of something which is ... expected to occur in the future" will not sustain an action for fraud) (quoting *Zanani v. Savad*, 217 A.D.2d 696, 697, 630 N.Y.S.2d 89 (N.Y. 1995)).[4]  "Economic prognostication, though faulty, does not, without more, amount to fraud."  *Decker v. Massey Ferguson, Ltd.* 681 F.2d 111, 117 (2d Cir. 1982); s*ee also In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d at 42 ("misguided optimism is not a cause of action, and does not support an inference of fraud") (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994)).[5]

     Predictions of future events can support a fraud claim only where they are "known by the author to be false or made despite the anticipation that the event will not occur." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group, LLC*, 19 A.D.3d 273, 275 N.Y.S.2d 14, 16 (1st Dept. 2005) (quoting *Cristallina S.A. v. Christie, Manson & Woods Intl.*, 117 A.D.2d 284, 294-295, 502 N.Y.S.2d 165 (N.Y. 1986)).  Accordingly, in order to state a

---

[4]     *See also Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ("mere 'puffery' or opinions as to future events are not sufficient to form the basis of a fraud claim") (citing *Baker v. Dorfman*, 239 F.3d 415, 423 (2d Cir. 2000); *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)).

[5]     A number of the cases cited herein concern securities fraud claims, but their reasoning applies with equal force to Plaintiff's common law fraud claim because "[t]he standard[s] for alleging common law fraud and securities fraud essentially are the same." *Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221, 227 (S.D.N.Y. 2006).

claim for fraud based on financial projections with the specificity required by Rule 9(b), a complaint must plead facts showing that the defendant "lacked a reasonable basis" for the projections or otherwise knew that they were inaccurate <u>at the time they were made</u>. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996); *Goplen v. 51job, Inc.,* 453 F. Supp. 2d 759, 770 (S.D.N.Y. 2006) (in order to satisfy Rule 9(b), "[p]laintiffs must show that defendants knew or should have known that . . . projections were misleading when made"). It is not sufficient to allege that the predictions proved incorrect in hindsight, because we "have not yet come to the point that a lack of clairvoyance constitutes fraud." *In re NTL, Inc. Securities Litig.*, 347 F. Supp. 2d 15, 26-7; (S.D.N.Y. 2004); *see also Goplen*, 453 F. Supp. 2d at 770; *see also Shields*, 25 F.3d at 1129 (courts have "rejected the legitimacy of alleging fraud by hindsight" by alleging "statements by defendants predicting a prosperous future and hold[ing] them up against the backdrop of what actually transpired"); s*ee also Hoffman v. Playmates of Miami, Inc*., 22 A.D.2d 674, 674, 253 N.Y.S.2d 307, 307-08 (1st Dep't 1964) (noting that it "is not enough" to infer falsity "solely from the failure of the event to occur").

In *Decker v. Massey-Ferguson, Ltd*., the Second Circuit dismissed a securities fraud claim that rested on allegations that the defendant misrepresented its expectation of higher sales. 681 F.2d 111 (2d Cir. 1982). The Court reasoned that Rule 9(b) is not satisfied by a mere allegation of faulty economic prognostication and requires "particulars as to why [a defendant]'s stated reliance on those forecasts was false or misleading." 681 F.2d at 117-118; *see also San Leandro,* 75 F.3d at 813 (dismissing fraud claim where plaintiffs failed to allege "circumstances to show that the defendants lacked a reasonable basis for their optimistic, but qualified,

-14-

predictions as to the company's future performance"); *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004) (affirming dismissal of fraud claim based on inaccurate earnings projections in analysts' reports where complaint failed to explain why the projections were fraudulent at the time they were made); *Goplen*, 453 F. Supp. 2d at 770 ("these allegations are deficient because plaintiffs provide no facts or details in support; plaintiffs fail to identify any documents, meetings, or reports that show that defendants knew or should have known that the fourth quarter revenue and earnings projections were misleading at the time"). The same logic compels dismissal here, because Plaintiff has failed to plead any facts showing that Defendants knew the revenue projections at issue lacked a reasonable basis or were otherwise misleading at the time they were made.

The Amended Complaint offers only one allegation to support the conclusion that the projections were fraudulent at the time they were made — as opposed to simply proving inaccurate in hindsight. Specifically, Plaintiff speculatively asserts that, because of "the limited life span of residential real estate sales," Defendants "must have known when negotiating the loan" that certain real estate closings on which the projections were based would not take place. Am. Compl. ¶ 24. But courts have rejected this sort of rank speculation based on timing.

As the Fourth Circuit has recognized, "an inference from timing alone is not sufficient, without additional supporting facts and circumstances, to withstand the strict requirements of Rule 9(b)." *Hillson Partners L.P. v. Adage, Inc.*, 42 F.3d 204, 215 (4th Cir. 1994) (collecting cases). Thus, where a complaint alleges "*no facts*, other than timing" to establish that a prediction "lacked a reasonable basis," it fails to state a claim for fraud with the specificity required under the rule. *Id.* (emphasis original). Here, Plaintiff has failed to allege

any facts beyond timing that would establish that the financial projections on which the fraud claim is based lacked a reasonable basis.  The claim should therefore be dismissed.[6]

The inadequacy of Plaintiff's allegations is made all the more clear by examining cases in which courts have sustained fraud claims based on future projections.  Where such claims have been sustained, the complaint has alleged specific facts showing that a projection was fraudulent at the time it was made.  For example, in *Cosmas v. Hassett*, the Second Circuit found that an allegation of fraud premised on sales projections was alleged with sufficient particularity because the projections were premised on expected sales to customers in China and the defendant allegedly knew that recently-enacted import restrictions would prevent the company from making those sales.  886 F.2d 8 (2d Cir. 1989).  Likewise, in *Harsco Corp. v. Segui*, the Second Circuit found that a company's representation that a plant would be operational in the next few months was actionable in light of allegations that the main foundations for the plant had not yet been poured.  91 F.3d 337, 346 (2d Cir. 1996).  Here, the Amended Complaint is devoid of any such specific factual allegations demonstrating that Defendants' revenue projections were fraudulent at the time they were made.  Plaintiff's allegations of inaccurate financial projections therefore fail to state a claim for fraud.  *See, e.g., Goplen*, 453 F. Supp. 2d at 770.

---

[6]    Even assuming Plaintiffs are correct that residential real estate sales typically take place within a limited time frame — an assertion that is open to question — it does not follow that a party will necessarily know from the outset of problems that might delay or prevent the transactions.  A projection, although made in good faith and with a reasonable basis, may be rendered inaccurate by any number of events that happen within a short period of time.

> B.    *The Allegations Relating to the Hill Country Harbor Deal Likewise Fail to State a Claim for Fraud.*

Plaintiff's allegations relating to the Hill Country Harbor transaction are equally deficient for a number of reasons.  First, the allegations fail to state a claim because they are demonstrably false.  Plaintiff's claim that Defendants failed to disclose "that there were problems with this deal" (Am. Compl. ¶ 25) is belied by the disclosure schedule in the LPS Agreement, which states that the Hill Country Harbor project is "on hold' and that it "has not been determined at this point whether, or in what form, this project will proceed."  LPS Agreement Schedule V.  The Court is not required to accept the truth of factual allegations that are contradicted by documents that may be properly considered on a motion to dismiss.  *Rapoport*, 88 F. Supp. 2d at 184.  Rather, if such "documents contradict the allegations of the amended complaint, the documents control" and any contradictory claims should be dismissed.  *Id.*

The claim fails for the additional reason that a fraud claim will not lie if it "arises out of the same facts as plaintiff's breach of contract claim."  *Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2007 WL 2044656, at *7 (S.D.N.Y. Jul. 17, 2007) (quoting *Telecom Intl. Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).  Rather, if a claim "rests on misrepresentations or omissions concerning representations and warranties contained" in a written agreement, it "must be pleaded as a breach of contract claim."  *Id.* at *6.  As this Court explained in *Ritchie*, there are only limited exceptions to this rule:

> In order to succeed on a fraud claim arising from a breach of contract, a plaintiff must show: (1) "a legal duty separate from the duty to perform under the contract"; (2) "a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "special damages that are caused by the misrepresentation and unrecoverable as contract damages."

*Ritchie*, 2007 WL 2044656, at *7 (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)).

Here, none of the exceptions apply.  There is no separate legal duty apart from the duty to perform under the contract and no special damages are sought.  Moreover, representations concerning the Hill Country Harbor deal are not collateral or extraneous to the agreement, because the development is the subject of a representation in the agreement. Specifically, Section 4(k) represents that all existing sales and marketing agreements are "in full force and effect" except as disclosed in Schedule V, which identifies the Hill Country Harbor deal as "on hold."  LPS § 4(k) & Schedule V.  Because the Hill Country Harbor deal is covered by a representation in the agreement, Plaintiff's only recourse is to bring a claim for breach of the representation, as it has done in the Amended Complaint.  *See* Am. Compl. ¶ 35.

Finally, the claim fails for the independent reason that Plaintiff cannot establish the essential element of reasonable reliance.  Plaintiff could not have reasonably relied on any assurances about the Hill Country Harbor deal in light of the disclosure in the contract that the deal was on hold.  Reliance is unreasonable as a matter of law where a representation directly contradicts the terms of a written agreement.  *See Morrissey v. General Motors Corp.*, 21 Fed. Appx. 70, 73 (2d Cir. 2001); *Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*, No. 06 Civ. 1745, 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008).[7]

---

[7]    The Amended Complaint also asserts that Traditions breached a representation that a contract relating to a different development — the Capella Residences at Hughes Center — was "in full effect at closing."  Am. Compl. ¶ 35.  Although this allegation appears to be asserted only in support of Plaintiff's breach of contract claim, any attempt to bring a fraud claim based (continued…)

## II.     THE INFORMATION CLAIMS SHOULD BE DISMISSED.

The Amended Complaint asserts three Information Claims — Count III, a claim that Defendants breached Section 5(c) of LPS Agreement by failing to provide the Requested Information;[8] Count IV, a claim that Defendants should be required to specifically perform Section 5(c) of the Agreement by providing the Requested Information; and Count V, a claim that failing to provide the Requested Information breached the implied covenant of good faith and fair dealing in the LPS Agreement.  Each claim is deficient and should be dismissed.

### A.     *Section 5(c) of the LPS Agreement Does Not Grant Plaintiff the Right to Receive the Requested Information.*

Counts III and IV of the Amended Complaint should be dismissed because Section 5(c) of the LPS Agreement does not require Defendants to supply the Requested Information.  The provision nowhere mentions any of the Requested Information expressly and clearly is not intended give Plaintiff broad rights to demand whatever financial information it pleases.  Rather, the limited purpose of the provision is to require AEY — not Traditions — to

---

on the allegation would fail because it "rests on misrepresentations or omissions concerning representations and warranties contained" in a written agreement, and therefore "must be pleaded as a breach of contract claim." *Ritchie*, 2007 WL 2044656, at *6.  Moreover, Plaintiff's conclusory assertion that the Capella Residences contract was not "in effect" is insufficient to state a claim for fraud, absent supporting factual allegations, such as an allegation that one of the parties terminated the agreement.  *See In re NTL, Inc. Securities Litig.*, 347 F. Supp. 2d 15, 27 (S.D.N.Y. 2004) ("A conclusory allegation that the opposite of a statement ... is true, without further factual elaboration, is insufficient.") (internal citations and quotation marks omitted).  *See id.*  The allegation fails to support a fraud claim for the independent reason that representations relating to the Capella Residences cannot have been material, in light of the fact that the development was projected to earn no revenue in the financial projections attached to the LPS Agreement.  *See* LPS Agreement Ex. E at 4 ("Financial Summary by Project").

[8]     Count II appears in part to be based on other alleged contractual breaches as well.  This motion, however, seeks the dismissal of Count II only to the extent that it is based on failure to provide the Requested Information.

take actions and provide instruments and documents that are necessary for the purposes of

obtaining, creating, or perfecting Plaintiff's security interest in the collateral that AEY has

pledged under the agreement.  LPS Agreement § 5(c).

> The intent of the provision is made clear by the bolded language below, which

Plaintiff omits when selectively quoting the provision in the Complaint:

> At any time and from time to time, upon the reasonable written request of
> [Plaintiff], and at the sole expense of Pledgor [AEY], Pledgor [AEY] shall promptly
> and duly give, execute, deliver, file and/or record such further instruments and
> documents and take such other actions as [Plaintiff] may reasonably request for the
> purposes of obtaining, creating, perfecting, validating or preserving the full benefits
> of this Agreement and of the rights and powers herein granted **including, without
> limitation, filing UCC financing or continuation statements, provided that the
> amount of the indebtedness secured hereby shall not be increased thereby.
> Pledgor [AEY] hereby authorizes [Plaintiff] to file any such financing
> statement or continuation statement to the extent permitted by law.  If any
> amount payable under or in connection with any of the Collateral shall be or
> become evidenced by any promissory note, other instrument or chattel paper,
> such note, instrument or chattel paper shall be promptly delivered to
> [Plaintiff], duly endorsed in a manner satisfactory to [Plaintiff], to be held as
> Collateral pursuant to this Agreement.**

LPS Agreement § 5(c) (emphasis added).  The bolded language consists of specific examples of

the kinds of documents that AEY is required to provide, and the kinds of actions AEY is required

to take, under the provision — *i.e.,* "filing UCC financing or continuation statements" to perfect

a security interest in the collateral; and delivering and endorsing "any promissory note, other

instrument or chattel paper" evidencing or constituting Loan collateral.  All of the specific

examples relate to obtaining, perfecting, or securing Plaintiff's security interest in the collateral.

> Under basic doctrines of contract interpretation, the Court must interpret the

general language in the provision by reference to these specific examples.  *See 242-44 East 77th*

-20-

*Street, LLC v. Greater New York Mut. Ins. Co.*, 31 A.D.3d 100, 815 N.Y.S.2d 507, 510 (1st

Dep't 2006) ("'a series of specific words describing things or concepts of a particular sort are

used to explain the meaning of a general one in the same series.'") (citations omitted); *In re*

*Chateaugay Corp.*, 154 B.R. 843, 851 (S.D.N.Y. Bankr. 1993) ("where general terms precede

specific terms, the general terms should be read to apply only to persons or things in the same

general kind or class as those specifically mentioned") (internal quotation marks and citations

omitted); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 413-14 (2d Cir. 2001) ("Even

where there is no 'true conflict' between two provisions, 'specific words will limit the meaning

of general words if it appears from the whole agreement that the parties' purpose was directed

solely toward the matter to which the specific words or clause relate.") (internal citations

omitted).  The specific examples make clear that the more general language in the provision,

referring to "documents and . . . actions" Plaintiff "may reasonably request" to preserve the "full

benefits of this Agreement," is intended only to require AEY to provide documents and

instruments of a similar character – *i.e.*, documents necessary to obtain, create or perfect a

security interest in the collateral.

            This interpretation of Section 5(c) is confirmed by the fact that it applies by its

terms only to AEY, the "Pledgor" which has pledged its membership interests in Traditions as

collateral for the Loan, and <u>not</u> to Traditions, the borrower whose financial information Plaintiff

seeks.  If the parties had intended for the provision to serve as a vehicle for requiring the

production of the Requested Information —which consists of financial and operating statements

of Traditions and other information concerning Traditions — then the provision would naturally

have required Traditions to provide the information, not AEY.  The provision applies to AEY

alone because its sole purpose is to facilitate efforts to obtain, create, and perfect a security interest in the collateral pledged by AEY under the LPS Agreement.

Plaintiff's interpretation of Section 5(c) to give it the right to any financial information relevant to its "concerns" about Traditions' performance not only ignores this limited purpose of the provision, but would effectively rewrite the parties' agreement. The terms of the Loan Documents were heavily negotiated between sophisticated parties and grant Plaintiff the right to receive specific documents and information, including an annual budget and documents and instruments relating to the collateral. *See, e.g.,* LPS Agreement § 7 (initial and annual budgets); *id.* § 5(c) (UCC financing and continuation statements and other instruments relating to collateral). To interpret the contract as Plaintiff does would provide information rights far broader than what the parties specifically negotiated. A court should not rewrite a contract under the guise of interpretation. *See, e.g., Reiss v. Fin. Perf. Corp.*, 97 N.Y.2d 195, 199, 764 N.E.2d 958, 961 (N.Y. 2001) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing") (internal quotation marks and citations omitted); *RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 37 A.D.3d 272, 831 N.Y.S.2d 120, 123 (1st Dep't 2007) ("there is no basis to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (internal citations and quotation marks omitted).

          **B.**     *Even Under Plaintiff's Broad Reading of Section 5(c), Specific*
                 *Performance Would Be Inappropriate.*

Even under Plaintiff's broad reading of Section 5(c), Count IV, which seeks specific performance, fails. "By the great weight of authority," specific performance may not be

granted "unless the terms of the contract are sufficiently certain for the court to decree with some exactness what the defendant must do." 25 *Williston on Contracts* § 67:4 (4th ed.); *Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945) ("for the granting of specific performance the contract must be sufficiently certain in its terms to permit the decree to state with some exactness what the defendant must do").  Thus, a claim for specific performance should be dismissed where the contract term a plaintiff seeks to specifically enforce is not "certain enough to permit the court to frame an order of specific performance...."  *Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028, 2007 WL 1041648, at *20 (S.D.N.Y. Apr. 5, 2007) (citations omitted). Here, Plaintiff's reading of Section 5(c) to require Traditions to do anything "[Plaintiff] may reasonably request for the purposes of . . . preserving the full benefits of this Agreement" — and not just actions related to creating or perfecting a security interest in the collateral — renders the obligation so broad and amorphous that it may not be specifically enforced.

In *Netherby*, a judge of this Court declined to grant specific performance in directly analogous circumstances.  The plaintiff requested specific performance of a contract term requiring "Buyer . . . to use its best efforts to keep Seller generally informed of the activities of Buyer's licensees, including providing Seller with copies of such licenses presently in existence and licenses that are executed in the future."  *Id.* at *3.  In rejecting the claim, the Court held as follows:

> The Court declines to order specific performance of defendant's obligation to keep plaintiff "generally informed" of licensees' activities, except to the extent it specifically requires defendants to provide copies of licenses. "Generally informed" provides no meaningful guidance to the Court in framing an order or ensuring compliance.

*Id.* at 21.

-23-

By the same token, while specific performance might be an appropriate remedy here if Plaintiff sought any of the documents specifically enumerated in Section 5(c) such as UCC financing statements, the general language Plaintiff relies on — requiring AEY to provide documents Plaintiff "may reasonably request" for the purpose of "preserving the full benefits of this Agreement" — provides no meaningful guidance for framing an order of specific performance. In the absence of such guidance, specific performance is inappropriate. *See id.*

> C.     *Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed.*

Because Plaintiff has no contractual right to the Requested Information under any express provision of the Loan Documents (*see* Point II.A), Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count V of the Complaint) necessarily fails. The implied covenant "'…does not operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and … are not unfairly denied express, explicitly bargained-for benefits.'" *CSI Investment Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) (quoting *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990)); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("the obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract").

The claim fails for the additional reason that it is duplicative. "When 'the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of an express provision of the underlying contract,' the two claims are duplicative." *CSI Inv. Partners II, L.P.*, 507 F. Supp. 2d at 425 (S.D.N.Y. 2007) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 964, 989

-24-

(S.D.N.Y. 1995)).  *See also Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) ("a breach of the implied covenant of good faith and fair dealing is redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim of breach of an express provision of the underlying contract").  Here, Defendants' alleged refusal to provide the Requested Information is the basis both of a claim that Defendants have violated Section 5(c) of the LPS Agreement and of a claim for breach of the implied covenant.  The implied covenant claim is therefore duplicative and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss.

Dated: July 29, 2008

Respectfully submitted,
COVINGTON & BURLING LLP

By: s/ C. William Phillips
     C. William Phillips
     Mark P. Gimbel
     Ethan Jacobs

The New York Times Building
620 Eighth Avenue
New York, New York  10018-1405
(212) 841-1000

*Attorneys for Defendants*